**Ranaan KATZ, Plaintiff**

v.

**Irina CHEVALDINA, Defendant.**

**CASE NO. 12–22211–CIV–KING**

United States District Court,
S.D. Florida,
**Miami Division.**

Signed August 17, 2015

Alan Jay Kluger, Jorge Roberto Delgado, Todd Alan Levine, Kluger Kaplan Sil-

verman Katzen & Levine, PL, Joshua Evan Saltz, Michael B. Chesal, Peretz Chesal & Herrmann, P.L., Miami, FL, for Plaintiff.

Benedict P. Kuehne, Michael T. Davis, Law Office of Benedict P. Kuehne, P.A., Herman Joseph Russomanno, Robert John Borrello, Russomano & Borello PA, Richard Jay Burton, Burton Firm, Miami, FL, Marc A. Burton, The Burton Firm, Peter J. Solnick, Peter J. Solnick PA, Aventura, FL, for Defendant.

### ORDER GRANTING IN PART BILL OF COSTS AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES

JAMES LAWRENCE KING, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** comes before the Court upon Magistrate Judge Edwin G. Torres' May 6, 2015 Report and Recommendation (the "R & R on Costs") (DE 198), which recommends granting in part Defendant's Bill of Costs (DE 170), and Magistrate Judge Torres' May 6, 2015 Report and Recommendation (the "R & R on Fees") (DE 199),[1] which recommends granting in part and denying in part Defendant's Verified Motion for Attorney's Fees and Non–Taxable Costs (DE 177).

The Court has performed a *de novo* review of each R & R and Plaintiff's Objections to the R & R on Fees,[2] in addition to its review of the underlying motions, and the responses and replies thereto. Upon consideration of the record and the R & R, the Court finds that Magistrate Judge Torres' well-reasoned, thorough R & R accurately states the law and facts of the case.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED:**

1. Magistrate Judge Edwin G. Torres' May 6, 2015 Report and Recommendation (**DE 198**) be, and the same is, hereby **AFFIRMED** and **ADOPTED** as an Order of this Court;

2. Defendant's Bill of Costs (**DE 170**) be, and the same is, hereby **GRANTED IN PART** and Defendant IRINA CHEVALDINA shall recover from Plaintiff RANAAN KATZ a total taxable costs award of $2,403.50, together with post-judgment interest on that sum from the date of this Order, for which sum let execution issue;

3. Magistrate Judge Edwin G. Torres' May 6, 2015 Report and Recommendation (**DE 199**) be, and the same is, hereby **AFFIRMED** and **ADOPTED** as an Order of this Court;

4. Plaintiffs Objections to the R & R (**DE 201**) be, and the same are, hereby **OVERRULED;**

5. Defendant's Verified Motion for Attorney's Fees and Non–Taxable Costs (**DE 177**) be, and the same is, hereby **GRANTED IN PART** and Defendant IRINA CHEVALDINA shall recover from Plaintiff RANAAN KATZ a total attorney's fee award of $152,433.68, for which sum let execution issue.

**DONE** and **ORDERED**

### REPORT AND RECOMMENDATION

EDWIN G. TORRES, United States Magistrate Judge

This matter is before the Court pursuant to Defendant Irina Chevaldina's ("De-

---

**1.** The Court has additionally considered Plaintiff's Objections to Magistrate Judge Torres' R & R on Fees (DE 201).

**2.** Plaintiff did not file any written objections to the R & R on Costs

fendant") Bill of Costs. [D.E. 170]. After due consideration of the Motion, Plaintiff Raanan Katz's ("Plaintiff") Objection to the Bill of Costs [D.E. 175], Defendant's Reply in Support of Bill of Costs [D.E. 176], and the record in this case, the Court recommends granting Defendant's Bill of Costs to the extent that $2,403.50 should be taxed.[1]

## I. BACKGROUND

Plaintiff holds the copyright to an unflattering photograph of himself which Defendant published as part of highly critical blog articles she wrote about Plaintiff. Plaintiff filed suit for copyright infringement against Defendant, asking the Court to enjoin Defendant from further use of the Photograph. [D.E. 148]. The Honorable James Lawrence King adopted the Report and Recommendation of Magistrate Judge Chris M. McAliley which recommended granting summary judgment for the Defendant, concluding: "that a reasonable trier of fact could reach only one conclusion: that Defendant's use of the photograph was fair, and did not constitute infringement." [D.E. 167 at 2], As a result, the Court directed the Clerk to enter judgment in favor of Defendant to close the case. [D.E. 168]. On October 6, 2014, Defendant filed the present Bill of Costs requesting the Clerk tax $2,623.50 in costs. [D.E. 170].

## I. ANALYSIS

### A. Standard for Awarding Costs

■ Federal Rule of Civil Procedure 54(d)(1) prescribes an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. *Tempay Inc. v. Biltres Staffing of Tampa Bay, LLC,* 2013 WL 6145533, at *2 (M.D.Fla. Nov. 21, 2013). Rule 54 establishes a presumption that costs should be awarded unless the district court decides otherwise. *Chapman v. Al Transp.,* 229 F.3d 1012, 1038 (11th Cir.2000). However, "the district court's discretion not to award the full amount of costs incurred by the prevailing party is not unfettered;" the district court must articulate a sound reason for not awarding full costs. *Id.* at 1039 (internal citations omitted).

Specifically, pursuant to 28 U.S.C. § 1920, the following may be taxed as costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for' exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under [28 U.S.C. § 1923]; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

■ 28 U.S.C. § 1920; *see Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 440–41, 107 S.Ct. 2494, 96 L.Ed.2d 385

---

1. This Matter was referred to the undersigned Magistrate Judge by the Honorable James Lawrence King. [D.E. 172].

(1987) (finding that 28 U.S.C. § 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the discretionary authority granted in Rule 54(d)). The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir.1994).

Upon granting Defendant's motion for summary judgment, judgment was entered in favor of Defendant on all counts. Thus, Defendant is the prevailing party in this action and is entitled to costs under Fed. R.Civ.P. 54(d). *See Powell v. Carey Int'l, Inc.*, 548 F.Supp.2d 1351, 1356 (S.D.Fla. 2008) (stating that a prevailing party is one who "prevailed on 'any significant issue in the litigation which achieved some of the benefit the parties sought in bringing the suit' ").

In the Bill of Costs proposed by Defendant, she requests that the Clerk tax the following as costs:

Defendant's First Deposition Transcript—Irina Chevaldina ($670.70);

Defendant's Second Deposition Transcript—Irina Chevaldina ($204.80);

Plaintiff's Deposition Transcript—Raanan Katz ($1159.00);

Deposition Videotape—Raanan Katz ($395.00);

Hearing Transcript—June 27, 2013, ($194.00).

[D.E. 170 at 4],

In Plaintiffs Objections to Defendant's Bill of Costs, Plaintiff contests Defendant's requests regarding each itemized expense. [D.E. 175]. As such, we will individually address whether these items are taxable costs under 28 U.S.C. § 1920.

### B. Defendant's First Deposition Transcript

■■■ Plaintiff claims that Defendant's proposed cost of $670.70 for her deposition should be reduced by $80.00 because the CD/Condense package, delivery, and e-transcripts are not taxable costs. Costs for deposition transcripts are taxable under 28 U.S.C. § 1920(2) so long as the transcripts were "necessarily obtained for use in the case." *See EEOC v. W & O, Inc.*, 213 F.3d 600, 620–21 (11th Cir.2000) (noting that costs of deposition transcripts may be taxed where the transcripts were, either wholly or partially, "necessarily obtained for use in the case"). Whether transcripts have been "necessarily obtained for use in the case," or merely for the convenience of counsel, is to be determined on a case-by-case basis. *See, e.g., Desisto Coll., Inc. v. Town of Howey-in-the-Hills*, 718 F.Supp. 906, 913 (M.D.Fla. 1998). In determining the necessity of a deposition, the deposition must only appear to have been reasonably necessary at the time it was taken, regardless of whether it was ultimately used at trial. *See EEOC*, 213 F.3d at 620–21. The burden lies with the challenging party to show that the deposition was not related to an issue in the case at the time it was taken. *Id.* at 621.

■■■ Not all deposition costs are recoverable. *Muldowney v. MAC Acquisition, LLC*, 2010 WL 3385388, *2 (S.D.Fla.2010) ("the court will only consider those taxable costs stated under 28 U.S.C. § 1920"). Parties are ordinarily not reimbursed for extraneous costs associated with the depo-

sitions that are not expressly sanctioned or permitted by the statute. Courts in this District have determined that "... fees for expedited or condensed transcripts, compressed and miniscript versions, and CD ROMs with ASCII are not reimbursable under § 1920." *See Licausi v. Symantec Corp.*, 2009 WL 3177566 *3 (S.D.Fla.2009) (citation omitted). Courier and postage fees are also not recoverable under § 1920. *See Avirgan v. Hull*, 705 F.Supp. 1544, 1548 (S.D.Fla.1989). Likewise, shipping costs are not recoverable. *Fin. Bus. Equip. Solutions, Inc. v. Quality*, 2009 WL 1423931, *3 (S.D.Fla. May 18, 2009).

Defendant has put forth no basis for an exception to the general rule that extraneous costs are not taxable in the case of the costs of her CD/Condense package, delivery, and e-transcripts. These optional deposition charges are extraneous, and thus cannot be reimbursed. Without any showing why these extraneous costs would be necessary, these extra costs attached to the deposition costs should be removed, and the Plaintiff should be taxed only $590.70 for Defendant's first deposition transcript.

### C. Defendant's Second Deposition Transcript

■ Defendant seeks to tax costs for the transcript of Defendant's continued deposition at $154.80 for the overnight expedited delivery of the transcript along with $35.00 for an E–Transcript and $15.00 for Delivery for a total of $204.80. Similar to her first deposition transcript, Plaintiff offers no justification for the extraneous costs of an E–Transcript or Delivery fee, therefore those costs—totaling $50.00—are not taxable.

The costs of expedited transcripts, however, can be reimbursed in certain cases where the expedited transcript was essential to the resolution of the case in favor of the prevailing party. The burden of making that showing falls on the requesting party. *See Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, 2013 WL 1345374, at *3 (S.D.Fla. April 3, 2013).

■ Here, Defendant has met the burden for expediting her second deposition. It was the Plaintiff who terminated the deposition and filed a motion to compel for sanctions. At the deposition, Plaintiff's counsel ordered the overnight deposition transcript along with a videotape so he could seek having a special master appointed. The deposition reads as follows:

BY MR. KLUGER: Q. That wasn't my question. I'm talking about Exhibit 41, September 15th, 2012. We've identified a picture. I've asked you whether Mr. Katz asked you to put this in?

MR. BURTON: Objection to the form of the question, irrelevant.

THE WITNESS: He didn't because he doesn't need to ask me.

BY MR. KLUGER: Q. But he didn't; right?

MR. BURTON: Objection to the form of the question.

MR. KLUGER: All right. We're done. I'm terminating the deposition. I'm taking this transcript. I'm going to go to the court and I'm asking for a master. I've had it with you. Type it up. I need it tomorrow. Can you get me the video tomorrow?

THE VIDEOGRAPHER: Yes.

MR. KLUGER: Find out how long I have on the other one.

THE VIDEOGRAPHER: I'm working on it right now.

MR. KLUGER: Great.

MR. BURTON: You wanted a short day, Alan.

MR. KLUGER: You should have taken your meds before you got here.

MR. BURTON: I'd like that on the record. "You should have taken your meds before you got here," please put that on the record.

[D.E. 90–2 at 21–22].

Plaintiff insisted on receiving overnight copies of the transcript. He cannot now claim that it was not essential for the Defendant's defense given he was demanding the transcripts so he could seek sanctions. With the threat of motions pending, Defendant has shown it was essential to expedite the transcripts given the situation. The full amount of the second deposition transcript charges of $154.80 should be taxed against Defendant.

### D. Plaintiff's Deposition and July 27, 2014 Hearing Transcript.

■ Defendant seeks to tax costs for "Mini/Word/ASCII" copies of Plaintiffs deposition transcript ($40.00), and "handling" ($20.00) in addition to the $1099.00 for the transcript and reporter's appearance. Similar to Defendant's deposition, and as explained above, Defendant provided no explanation justifying any costs in addition to the transcript and attendance charges. As such Plaintiff should be taxed only $1099.00 for his deposition costs which Plaintiff does not object to.

Similarly, Defendant has shown it was a necessary cost to obtain a hearing transcript of the June 17, 2014, hearing. Defendant has shown that it was necessary to her defense, and eventually led to the granting of summary judgment in her fa-

vor, to obtain a record of the hearing. We agree with the Defendant's argument that a showing the Plaintiff was not willing to divulge his financial information in depositions, which led to summary judgment, was necessary for her defense. Therefore, we find the expense of obtaining a transcript for the hearing necessary and the Plaintiff's should be taxed the full cost of $194.00 for the transcript.

### E. Videotape of Plaintiff's Deposition

■ Plaintiff submits that "Defendant provides no explanation for needing the videotape of Plaintiff's deposition." [D.E. 175 at 4]. While Plaintiff failed to argue in the Bill of Costs she proposed why it was necessary, she has done so in her response to Plaintiffs Objection. [D.E. 176 at 4]. Defendant contends that:

Defendant should be permitted to recover the costs associated with the videotape of Plaintiffs deposition. First, as the transcript citations ... indicate, Plaintiff ensured that Defendant's depositions were similarly videotaped. Second, Plaintiff was the sole complainant in this case. The only reason the videotape of Plaintiff s deposition was not utilized in this case was because the case was resolved at summary judgment. Assuming Plaintiff testified at trial, the video could have been useful for impeachment ... since Plaintiff s credibility was always at issue in this matter. [Defendant then noted Plaintiffs conviction for perjury and judgment for racial discrimination].

The videotape might also have been used in the trial in this matter because there is also no guarantee that Plaintiff would have testified at trial....

*Id.*

Upon review and taking into consideration the nature of the underlying issues

presented in this case, we conclude that Defendant has met her burden of showing the videotaped deposition of Plaintiff was reasonably necessary. *See Fantroy v. Publix Super Markets, Inc.,* 2014 WL 408426, at *3 (M.D.Fla. Feb. 3, 2014). As a result, Defendant should be award the full cost of $395.00 for the videotaping.

## IV. CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** Defendant's Bill of Costs [D.E. 170] should be **GRANTED** for the most part and **DENIED** in limited part. An order should be entered in favor of Defendant for a total award of $2,403.50 in taxable costs, together with post-judgment interest on that sum from the date of entering an order. Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of May, 2015.

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Defendant Irina Chevaldina's ("De-

fendant") Verified Motion for Attorney's Fees and Non–Taxable Costs. [D.E. 177]. After due consideration of the Motion, Plaintiff Raanan Katz's ("Plaintiff") Response and Objection to the Motion for Attorney's Fees [D.E. 187], Defendant's Reply to Plaintiffs Response [D.E. 193], and the record in this case, the Court recommends granting in part and denying in part Defendant's Motion for Attorney's Fees.[1]

## I. BACKGROUND

Plaintiff holds the copyright to an unflattering photograph of himself which Defendant published as part of highly critical blog articles she wrote about Plaintiff. Plaintiff purchased the photograph only after he realized Defendant's use of it in her blog. Plaintiffs purchase of the photograph was, from his perspective, to "stop this atrocity" of Defendant using the picture in her critical blog. As explained by Magistrate Judge Chris M. McAliley in her Report and Recommendation recommending granting summary judgment in favor of Defendant:

> Plaintiff is a businessman who testified that he considers the Photo "ugly" and "candid and embarrassing." He does not claim to be a celebrity and does not claim Magriso's (the original copyright holder's) market as his own. Not surprisingly, Plaintiff has not tried to sell or license the Photo to anyone. Rather, Plaintiff testified that he obtained the Assignment of Copyright "[b]ecause I wanted to stop this atrocity." (Plaintiff views the transfer of copyright as "a correction—correction of a mistake that happened."). He has not used the Photo other than in this litigation, and has done so here to prevent its publication.

---

1. This Matter was referred to the undersigned Magistrate Judge by the Honorable James Lawrence King. [D.E. 178].

[D.E. 148 at 23–24] (internal citations omitted)

Plaintiff filed suit for copyright infringement against Defendant, asking the Court to enjoin Defendant from further use of the Photograph. [D.E. 148 at 1]. The Honorable James Lawrence King adopted the Report and Recommendation of Judge McAliley which recommended granting summary judgment for the Defendant, concluding: "that a reasonable trier of fact could reach only one conclusion: that Defendant's use of the photograph was fair, and did not constitute infringement." [D.E. 167 at 2]. Judge McAliley based her conclusion on the fact that "Section 107 of the Copyright Act expressly recognizes the unauthorized reproduction of copyrighted material for the purpose of criticism and commentary, as fair use." [D.E. 148 at 9]. Significantly, the Court found three of the four factors for deciding if a defendant's use of a work is "fair" were in Defendant's favor, and the fourth factor was neutral. [D.E. 148 at 9–21]. As a result, the Court directed the Clerk to enter judgment in favor of Defendant and to close the case. [D.E. 168]. On October 6, 2014, Defendant filed the present Motion requesting an award of attorney's fees and non-taxable costs, pursuant to 17 U.S.C. § 505, in the amount of $184,556.35. [D.E. 177].

## II. ANALYSIS

### A. Entitlement to Attorney's Fees

■■■■ Generally, under the "American Rule" in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party. *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Certain statutory exceptions, however, do exist that allow the prevailing party to recover its fees. *Id.* In this case, Defendant as the prevailing party seeks to recover under the Copyright Act, 17 U.S.C. § 505, her reasonable attorney's fees and costs for defending against a copyright infringement suit. This statute authorizes an award of fees and costs. However, in order for a prevailing party to receive fees, it bears the burden of establishing entitlement to an award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### 1. Copyright Act—17 U.S. C § 505

■■■■ Under the Copyright Act, courts may award reasonable attorney's fees and costs to the prevailing party in a copyright infringement claim. 17 U.S.C. § 505.[2] The Copyright Act gives the court broad discretion to determine whether a party is the prevailing party and whether the amount of fees is reasonable. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155–56 (3rd Cir.1986).[3] However, an award for fees is not mandated in every case. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (citing with approval *Lieb*, 788 F.2d at 155). Even if the prevailing party seeks

---

2. The applicable section provides as follows:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

3. Courts in this circuit also routinely recognize that an award of reasonable attorney's fees under Section 505 of the Copyright Act ultimately lies within the discretion of the District Court. *See, e.g., MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842 (11th Cir.1999) (quoting *Montgomery v. Noga*, 168 F.3d 1282, 1303 (11th Cir.1999)), *aff'g, MiTek*

costs under Section 505, the Court has the discretion to limit or withhold any award. *Id.* at 534, 114 S.Ct. 1023. Regardless of which side is the prevailing party, the Court should apply its exercise of discretion evenhandedly to both plaintiffs and defendants: a finding of bad faith or frivolity is not required for an award. *Id.* at 520–21, 114 S.Ct. 1023. Where a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees to the defendant is very strong. *See Lil' Joe Wein Music, Inc. v. Jackson,* 2008 WL 2688117, at *4 (S.D.Fla. July 1, 2008).

### 2. Factors under the Copyright Act to Determine Reasonable Fees

 Courts should consider certain factors in determining whether or not the prevailing party is entitled to fees. These factors include, but are not limited to, the following: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and legal components of the case), and; (5) the need in particular circumstances to advance considerations of compensation and deterrence. See *Fogerty,* 510 U.S. at 535 n.19, 114 S.Ct. 1023 (adopting *Lieb* factors); *see, e.g., MiTek Holdings, Inc. v. Arce Eng'g Co.,* 198 F.3d 840, 842 (11th Cir.1999). *Fogerty* does not require the Court to weigh all of these factors. Indeed, "[t]here is no precise rule or formula for making these determinations," and courts should exercise equitable discretion. *Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. The factors enumerated in *Fogerty* and *Lieb* help guide a court's discretion to award fees "so long as such factors are faithful to the purposes of the Copyright Act." *Fogerty,* 510 U.S. at 535 n. 19, 114 S.Ct. 1023.

In *Fogerty,* the plaintiff, Fantasy, Inc., was the holder of a copyright for a song and brought an infringement action against the musician (John C. Fogerty) who originally composed the song and the companies that distributed the song. *Id.* at 520, 114 S.Ct. 1023. After extensive discovery and motion practice, the copyright infringement went to trial, and the jury returned a verdict in favor of the defendants. *Id.* Fogerty, as the prevailing party from trial, then moved to recover attorney's fees under 17 U.S.C. § 505. *Id.* at 520–21, 114 S.Ct. 1023. The District Court denied the motion, and the Court of Appeals affirmed. *Id.* Due to a split among the circuits, Fogerty sought certiorari from the United States Supreme Court on the issue of whether he was entitled to attorney's fees as the prevailing defendant below. *Id.*

The Court took the case and examined the language of Section 505 and the purposes of the Copyright Act. *Id.* at 522–529, 114 S.Ct. 1023. The Court found that a successful defense of a copyright infringement action furthered the goals of the Copyright Act and, upon the exercise of a court's discretion, the defendant as the prevailing party could be entitled to fees. *Id.* at 534, 114 S.Ct. 1023. The Supreme Court remanded the case back to the District Court to determine, in its discretion, an appropriate, reasonable award. *Id.* at 535, 114 S.Ct. 1023.

On remand, Fogerty sought over $2 million in fees, costs, and interest in connection with his successful defense on the

---

*Holdings, Inc. v. Arce Eng'g Co.,* 864 F.Supp. 1568 (S.D.Fla.1994); *Miller's Ale House, Inc. v. Boynton Carolina Ale House,* 2011 WL 855276, at *1 (S.D. Fla. Mar. 9, 2011); *Oravec v. Sunny Isles Luxury Ventures L.C.,* 2010 WL 1302914, at *3 (S.D.Fla. Mar. 31, 2010).

infringement action. *Fantasy, Inc. v. Fogerty*, 1995 WL 261504, at \*1 (N.D.Cal. May 2, 1995). In determining the reasonableness of the fees sought, the District Court noted that the case took extensive time and labor because the case went through several stages: to trial, to the Ninth Circuit Court of Appeals, to the Supreme Court, and back to the District Court on remand. *Id.* at \*3. The parties had engaged in lengthy discovery, including depositions, interrogatories, requests to produce and for admission, motion practice, etc. *Id.* The case also involved new and complex issues in a specialized area of law. *Id.* at \*4. In seeking his award, Fogerty excluded fees and costs for unsuccessful claims where possible, and the Court found that almost all of the fees Fogerty requested were reasonable. *Id.* at \*7–9. The Court did, however, reduce the total fee awarded by some clerical errors and interest. *Id.* at \*8 (noting that awarding interest is "clearly not the norm, especially in context of fees awarded under the Copyright Act of 1976"). In total, the District Court, in its discretion, awarded Fogerty over $1.3 million as reasonable attorney's fees and costs. *Id.* at \*9.

With these principles and illustrations in mind, we turn to an examination of each of the applicable factors under Section 505 to determine if a fee award is appropriate here.

### (a) Degree of Success Obtained

■ To be entitled to attorney's fees under Section 505, Defendant must show that she is the prevailing party. Defendant here prevailed on her Motion for Summary Judgment against Plaintiffs copyright infringement claim when the Court found Defendant's use of the photograph was fair and no reasonable jury could find otherwise. Therefore, it is undisputed that Defendant is the prevailing party in this matter because she received final judgment in her favor. This weighs heavily in favor of granting Defendant's attorney's fees—especially given the presumption in favor of awarding prevailing defendants' fees in copyright infringement suits. In an abundance of caution, this Court now moves on to consider the other *Fogerty* factors to weigh Defendant's entitlement to fees.

### (b) Frivolousness and Objective Unreasonableness

■ While the *Fogerty* case did not elaborate as to which entitlement factors are deemed more or less important, the trend in this Circuit is for courts to focus on the objective reasonableness factor when deciding whether to award attorney's fees. *See, e.g., Jenkins v. Jury*, 2009 WL 248232, at \*3 (M.D.Fla. Feb. 2, 2009) (awarding attorney's fees to the defendant because, *inter alia*, there was a "lack of merit" in the claims); *Amadasun v. Dreamworks, LLC*, 359 F.Supp.2d 1367, 1375–76 (N.D.Ga.2005) (awarding attorney's fees to the defendant because, *inter alia*, the plaintiff "[made] it impossible for the Court to conclude that Plaintiff ever subjectively believed his positions were reasonable" and because there was a "lack of evidentiary support" for the plaintiff's claims); *MiTek Holdings, Inc.*, 198 F.3d at 842 (encouraging parties to raise objectively reasonable claims and defenses in order to further the purposes of the Copyright Act). The law in this Circuit also shows that "copyright protection for an original work of authorship [does not] extend to any *idea.*" *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1316 (11th Cir. 2010) (citing 17 U.S.C. § 102(b); *Harper & Row Publishers, Inc. v. Nation Enters.*,

471 U.S. 539, 556, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)) (emphasis added). Section 107 expressly protects, as fair use, the unauthorized reproduction of copyrighted material for the purpose of criticism and commentary. 17 U.S.C. § 107; *see also Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir.2001) ("copyright does not immunize a work from comment and criticism").

■ Plaintiff argues as an initial matter that his case was objectively reasonable at the outset of the litigation. In support, Plaintiff states that because his claim survived an initial motion to dismiss the court essentially certified his *prima facie* case, and therefore it was reasonable to bring the suit. [D.E. 187 at 16]. While at one point Plaintiff might have filed a *prima facie* case, that analysis does not include the fair use doctrine defense. Only after a *prima facie* case was shown could Defendant move forward with her fair use defense. During the process of discovery it became abundantly clear this was the exact type of case Section 107 protects against. Therefore, Plaintiffs filing of a *prima facie* case is irrelevant given the unreasonableness of his suit could only be shown after discovery.

As Judge McAliley recognized in her Report and Recommendation, no reasonable fact finder could find for the Defendant. Plaintiff was privy to all the facts which led to summary judgment in Defendant's favor from the outset of the litigation. He was fully aware when he filed the suit that he had no intent to profit from his copyright, nor was he a victim of any economic damages from Defendant's use. The fact that the Court found three out of four factors weighed in favor of Defendant and the other was neutral clearly indicates that Plaintiffs attempts to sty-mie Defendant's speech are precisely what Section 107 is designed to protect against.

During the more than two years that this litigation consumed, Plaintiff should have at all times known his claim would eventually fail when the truth of his motivations was eventually known. After Plaintiff s lengthy attempts to improperly quiet Defendant through this lawsuit, evident in his vigorous litigation of an improper claim, this Court concludes that the objectively unreasonable factor strongly weighs in favor of Defendant.

### (c) Motivation

The next *Fogerty* factor concerns Plaintiff's motivation in pursuing his claims. At least one court in this Circuit has also looked closely to the motivation factor to determine entitlement to fees. *See Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at \*7 (July 1, 2008) (finding that "the questionable motivation" of Plaintiff in bringing and continuing the lawsuit is a factor that "militates in favor of" an award). Another court outside of this Circuit has also looked to the improper motivation factor and stated that if a Plaintiff has a losing cause yet continues to litigate, "there is no reason why the discretion of the Court should not be exercised to award fees...." *Cohen v. Va. Elec. & Power Co.*, 617 F.Supp. 619, 623 (E.D.Va.1985).

■ Here, it is crystal clear that Plaintiff's motivations pursuing this lawsuit were improper. Instead of using the law for its intended purposes of fostering ideas and expression, Plaintiff obtained the photograph's copyright solely for the purpose of suppressing Defendant's free speech. Unsurprisingly, Plaintiff argues that protecting his rights under the Copyright Act was his sole motivation for filing this suit.

[D.E. 187 at 13]. That assertion is rather dubious. Plaintiff has characterized this action as "just one battle" in a "malicious war." [D.E. 187 at 1]. While Plaintiff might view it necessary to remove his unflattering picture to "stop this atrocity" [D.E. 148 at 23], he may not resort to abusive methods to do so.

Plaintiff purchased the photograph taken of himself only after Defendant's use, then registered the copyright in an effort to prohibit Defendant from using the photograph in her critical blog of Plaintiff. Plaintiff filed this action only to prevent Defendant from using the photograph, and had no intention of marketing the photograph. Essentially, as Judge McAliley found, Plaintiff had no purpose for purchasing or copyrighting the photograph other than this litigation.

In this manner, Plaintiff attempted to use the Copyright Act for purposes wholly unrelated to the law's purpose of fostering the marketplace of ideas. For these reasons, we find the motivation factor weighs heavily in Defendant's favor.

### (d) Considerations of Compensation and Deterrence

The last factor from the non-exclusive *Fogerty* list concerns considerations of compensation and deterrence. As the Supreme Court explained as to this factor, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527, 114 S.Ct. 1023. In infringement cases, courts should also seek to further the interests of the Copyright Act by either deterring infringement or allowing public exposure to

valuable works. *Id.; see Mitek*, 198 F.3d at 842–43.

■■■ Here, the parties have already engaged in litigation for over two years, and now Plaintiff is seeking reversal at the appellate level. Defendant has incurred fees and costs to date of over $184,556.35. Because Plaintiff failed to support his pleadings, continues to vigorously pursue a claim without any merits, in the face of meritorious defenses, this Court recommends that awarding attorney's fees to Defendant promotes considerations of compensation and deterrence. To do otherwise would encourage continued abuse of the Copyright Act as a tool for stymieing free expression.

Plaintiff counters that he should not be punished for pursuing his good faith claims. Plaintiff, however, cannot use the Copyright Act to prevent fair use of his picture. Plaintiff is responsible for the consequences of his decisions in the face of well established legal principles that undermine his position.

Just as when plaintiffs succeed on their claims, a successful defense also helps define the boundaries of copyright infringement law. It also continues to allow the public to have access to creative elements and ideas. *See Baby Buddies, Inc.*, 611 F.3d at 1320. Under this last factor of compensation and deterrence, an award of attorney's fees furthers the goals of the Copyright Act and *Fogerty* by encouraging defendants to pursue their meritorious defenses to copyright infringement claims.

### 3. Conclusion after Weighing Factors to Determine Entitlement

As discussed above, it is the rule rather than the exception for a defendant as the prevailing party to receive fees. *See Lil'*

*Joe Wein Music, Inc.,* 2008 WL 2688117, at *2. After carefully considering all of the *Fogerty* factors, Defendant should be awarded attorney's fees under Section 505 because all four factors weigh strongly in favor of Defendant's position: (1) Defendant was the prevailing party; (2) Plaintiffs case was objectively unreasonable; (3) Plaintiff's motivation was improper, and; (4) an award of attorney's fees to Defendant will further deterrence and the goals of the Copyright Act. This Court therefore concludes that Defendant is entitled to recover reasonable attorney's fees under Section 505.

## B. Amount of Attorney's Fees

Having determined that Defendant is entitled to fees and costs, the Court must next determine what amount is reasonable. The Supreme Court has stressed that the determination of fees "should not result in a second major litigation." *Fox v. Vice,* 563 U.S. 826, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933). Fee applicants must submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) *is to do rough justice, not to achieve auditing perfection.* So trial courts may take into account their overall sense of a suit, and may use estimates in calculating

and allocating an attorney's time." *Fox,* 131 S.Ct. at 2216 (emphasis added).

■■■■ The existing settled law in this Circuit mandates calculating a reasonable attorney's fee by using the lodestar method, which requires this Court to multiply counsel's reasonable hourly rate by the reasonable hours expended. *See Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988); *Cuban Museum of Arts & Culture v. City of Miami,* 771 F.Supp. 1190, 1191 (S.D.Fla.1991). Defendant bears the burden of documenting reasonable hourly rates and reasonable hours expended. See *ACLU of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999); *Norman,* 836 F.2d at 1303.

### 1. Reasonable Hourly Rate

Defendant contends that her requested hourly rates are reasonable and fair to defend this action. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299.

■■■■ A reasonable hourly rate is one that is adequate to attract competent counsel in the relevant legal market, but does not produce a windfall to that attorney. *See Blum v. Stenson,* 465 U.S. 886, 894–95, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).[4] With respect to the issue of hourly rates, this Court "is itself an expert on

4. *Blum* involved efforts to recoup attorney's fees pursuant to 42 U.S.C. § 1988, not the Copyright Act. 465 U.S. at 888, 104 S.Ct. 1541. But case law construing what constitutes a "reasonable" fee applies uniformly across federal fee-shifting statutes that employ this language, including the Copyright Act. *See, e.g., City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449

(1992) (applying *Blum* and its progeny to fee awards under Solid Waste Disposal Act and Federal Water Pollution Control Act); *Kenny A. ex rel. Winn v. Perdue,* 547 F.3d 1319, 1338 (11th Cir.2008) (applying *Blum* and specifically listing the Copyright Act of 1976 under a "Partial List of Federal Statutes Providing for

the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman,* 836 F.2d at 1303. Several well-established factors may be considered in arriving at that prevailing market rate as set forth in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).[5]

■■■■■ Generally, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *ACLU of Ga.,* 168 F.3d at 437 (citing *Cullens v. Ga. Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994)). The relevant market for purposes of this case, therefore, is the South Florida legal community. To arrive at a reasonable hourly rate in this legal market, the "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU of Ga.,* 168 F.3d at 427 (quoting *Norman,* 836 F.2d at 1303). That requires that the applicant bear the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id.* The Court reviewed the information and materials submitted by Defendant's counsel to determine the prevailing market rate in this legal community for "similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299.

■■■■ Here, Defendant used the reputable and experienced law firms of Ben Kuehne P.A., the Burton Firm, and Coffey Burlingtion to defend her case, and now seeks the total amount of fees incurred through filing this motion. In support of the hourly rates, Defendant relies upon the following: (1) the attorneys' skills, experiences, and reputations; (2) the general background and disposition of the action; (3) the work performed and the expenses incurred in the action; and (4) the fact that Defendant's counsel have discounted their rates by requesting less than their normal attorney's fees for this case.

Defendant provided the following hourly rates and amount of hours billed for the lawyers who worked on the case:

---

the Prevailing Party To Recover a Reasonable Attorney's Fee").

**5.** The 12 *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

| Attorney | Rate | Hours | Total Amt |
|---|---|---|---|
| M. Randazza | $500/hr | 5.3 hrs | $2,650.00 |
| J.M. Devoy | $325/hr | 6.5 hrs | $2,112.50 |
| Tucker (paralegal) | $125/hr | 0.5 hrs | $62.50 |
| R. Kain | $187.50/hr | 27 hrs | $5,062.50 |
| D. Spielman | $137.50/hr | 65.25 hrs | $8,971.88 |
| Law Clerk | $75/hr | 21.75 hrs | $1,631.25 |
| D. Zack | $375/hr | 126.1 hrs | $47,287.50 |
| F. Tamayo | $250/hr | 5.2 hrs | $1,300.00 |
| E. Handleson | $275/hr | 19 hrs | $5,225.00 |
| V. Pinto Villa | $150/hr | 1.7 hrs | $255.00 |
| Williams (paral.) | $90/hr | 0.4 hrs | $36.00 |
| B. Kuehne | $400/hr | 115.8 hrs | $46,320.00 |
| S. Dmitrovsky | $250/hr | 2.4 hrs | $600.00 |
| M. Davis | $200/hr | 5.6 hrs | $1,120.00 |
| R. Burton | $400/hr | 72.05 hrs | $28,820.00 |
| M. Burton | $200/hr | 149.05 hrs | $29,810.00 |
| **Totals** | | **623.6 hrs** | **$181,264.13** |

Plaintiff has contested the hourly rates of Defendant's attorneys, with some justification because the Court only has to award fees "necessary to secure reasonably competent counsel" in the South Florida area. *Orenshteyn v. Citrix Sys., Inc.,* 558 F.Supp.2d 1251, 1257 (S.D.Fla.2007) (quoting *Yahoo! Inc. v. Net Games, Inc.,* 329

F.Supp.2d 1179, 1183 (N.D.Cal.2004)), *vacated and remanded on other grounds,* 341 Fed.Appx. 621 (Fed.Cir.2009); *see Norman,* 836 F.2d at 1299. As a result, Defendant's proposed reduced rates are a good starting point; but, the Court may further reduce those rates if a lower amount of fees is reflective of what a reasonable and competent lawyer charges in the community.

In total, having considered and weighed the evidence, counsels' reputations and experiences, and the Court's familiarity with attorney's fees in general, the undersigned finds that the requested hourly rates of $200–$400 for Partners David J. Zack, Benedict Kuehne, Richard Burton, and Marc Burton are certainly quite reasonable and appropriate. The Court will approve these rates for purposes of calculating the amount of reasonable fees.

### 2. *Reasonable Hours Expended*

█ The Court next evaluates Defendant's requested fees for the reasonableness of the total hours expended and billed by her respective counsel. *See Norman,* 836 F.2d at 1301–02. A fee application must include accurate records of the amount of time counsel spent on a particular case. *See Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. Defendant supports her respective fee requests by submitting chronological bills and invoices. Plaintiff generally opposes these requests and seeks to reduce or eliminate the fees and costs. Due to the voluminous fee documentation and the large number of hours claimed, the Court will not set out in this Report and Recommendation an hour-by-hour analysis of more than two years of billing. *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir.1994); *Villano v. City of Boynton Beach,* 254 F.3d 1302, 1311 (11th Cir.2001); *accord Trujillo v. Banco Central del Ecuador,* 229 F.Supp.2d 1369, 1375–76 (S.D.Fla.2002). Upon the Court's independent review, the undersigned finds that the vast majority of the fees incurred are quite reasonable, especially in light of Defendant's attorneys billing at a reduced rate. But we do so with one major reservation.

█ The major problem with Defendant's request is the duplication of effort involved in having thirteen lawyers and three paralegal/clerks contribute in large or small part to the defense of the case. While there is nothing inherently unreasonable about a client relying on multiple attorneys, the fee applicant must establish that the time spent reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation. *ACLU of GA.,* 168 F.3d at 432; *see also Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham,* 706 F.2d 1205, 1208 (11th Cir.1983,). Here, based on the descriptions of the work performed by the various attorneys from various law firms, this Court has found multiple attorneys billing for completing essentially the same tasks. Many billing entries are for attorney conferencing with other counsel of record. Due to the nature of the billing entries, the Court is not persuaded that many of these conferences are not duplicative billing entries of attorneys completing the same tasks. Defendant has provided little explanation or justification for such duplicative charges. The Court must eliminate these redundant and repetitive hours in the fee application keeping in mind that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman,* 836 F.2d at 1306.

■ Finally, we turn to the calculation of the adjusted number of hours that may be awarded in this case. The Court usually has two options. The Court can decide to follow the usual course of engaging in a task-by-task examination of the hours billed to excise excessive or redundant/duplicative hours. *E.g., ACLU of Ga.,* 168 F.3d at 429. Or, when the number of hours involved is very high, the Court can conclude that an hour-by-hour analysis is impractical. *See Villano,* 254 F.3d at 1311 (determining that 569.30 hours submitted for compensation "are extensive enough that we do not expect the district court or magistrate judge to conduct an hour-by-hour analysis in this case"; and affirming twenty-five percent across the board reduction).

Upon reviewing the record as a whole and the substantial number of hours requested here, which exceeds 623 hours for partner, associate and paralegal time, the Court readily concludes that a reduction of excess lawyers' billing is most appropriate to arrive at a reasonable fee amount in this case. Having conducted a line-by-line sampling of time, the work of attorneys David J. Zack, Benedict P. Kuehne, Richard J. Burton, and Marc A. Burton appears to be the bulk of the work conducted for different tasks. Therefore, the Court's review of the record reveals that awarding fees for only these four attorneys will eliminate the duplicative and unnecessary billing, and the reduction is both reasonable and necessary in order for the Court to meet its obligation under the law—"to ex-

clude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

### 3. Final Calculation of Reasonable Amount of Attorney's Fees

With these considerations in mind, the Court finds that Defendant's proposed hourly rates are reasonable and generally appropriate for the requested fee application. However, the Court finds that a reduction in attorneys is necessary in order to avoid duplicative billing. The undersigned recommends that the requested $184,556.35 in fees be reduced by $3,096.04 for unnecessary non-taxable costs,[6] and an additional $29,026.63 for duplicative billing of attorneys other than David J. Zack, Benedict P. Kuehne, Richard J. Burton, and Marc A. Burton. Therefore, the total award for attorney's fees and costs under Section 505 should be $152,433.68.

### III. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

1. Defendant's Verified Motion for Attorney's Fees and Non–Taxable Costs should be **GRANTED in part** and **DENIED in part.**

2. Defendant should recover from Plaintiff **$152,433.68 in attorney's fees.**

3. The Court should enter a fee and cost judgment, pursuant to Federal Rules of Civil Procedure 58, for that amount.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from

---

**6.** We find that mediation costs should not be awarded to a prevailing party as part of Copyright Act Section 505 costs. *See Oravec v. Sunny Isles Luxury Ventures, L.C.,* 2009 WL 6337121, at *29 (S.D. Fla. Jan. 12, 2009) (citing *Mota v. Univ. of Texas Houston Health Sci.,* 261 F.3d 512, 530 (5th Cir.2001)); *Ivory*

*v. Holme,* 2009 WL 1185309, at *2 (M.D. Fla. Apr. 30, 2009). As such, we will deny the request for mediation fees, but grant the $196.18 request for PACER and FedEx charges. No other non-taxable costs may be added to the award.

the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 6th day of May, 2015.